EDWARD CARROLL, JR., NOEL H. SANBORN and FRANCIS N. SANBORN, Claimants, *v.* THE STATE OF NEW YORK. No. 9391.

(Court of Claims, State of New York, May, 1910.)

States — Contracts — Ratification — By the Legislature; What constitutes ratification.

> While the State has placed limits upon the authority of its officers to contract and incur indebtedness on its behalf, it may, nevertheless, ratify any of their acts not void under the Constitution.
>
> Where the Attorney-General employs a stenographer in certain litigation at a certain rate and the stenographer continues to perform his duties during the term of the successor of the Attorney-General who employed him, the Legislature by subsequently appropriating moneys for expenses of the Attorney-General in the conduct of his office "including temporary clerical and stenographic services" ratifies the entire contract, though the moneys appropriated are not applied to the payment for such services but are expended for other purposes.

CLAIM for services as a stenographer in litigation against the State.

Litigation arose between the State and the Consolidated Gas Company of the city of New York concerning the constitutionality of the so-called eighty-cent gas statute. The State, through the Attorney-General, made a party to the litigation, was called upon to defend the statute. In the defense of the suit, Attorney-General Mayer employed a special stenographer to take minutes and furnish copy. For this service the stenographer was paid, down to the close of Attorney-General Mayer's term of office. At the beginning of the term of his successor, Attorney-General Jackson authorized the continuance of the service of the claimant; and he continued to take the minutes and furnish copy to the close of the case, April 2, 1907. He has not been paid for his services from January 1, 1907, to April 2, 1907. This claim has been filed to recover the sum of $8,921.03.

Other facts appear in the opinion.

Enos S. Booth, for claimants.

Daniel E. Brong, Deputy Attorney-General, for State of New York.

Rodenbeck, J.   This is a claim for $8,921.03 against the State, for services rendered by one of the claimants, Edward Carroll, Jr., as a stenographer in the suit brought in the United States Circuit Court for the Southern District of New York by the Consolidated Gas Company of New York against Julius M. Mayer as Attorney-General, the State Commissioners of Gas and Electricity and the city of New York and the district attorney of the county of New York, to test the constitutionality of the so-called eighty-cent gas statute.

The claimant Carroll was selected as the stenographer in the litigation by the counsel for all of the parties, and it was agreed that he should be paid at the rate of twenty-five cents a folio for the special master's copy and five cents a folio for each additional copy furnished to the parties.

An agreement was made by the Attorney-General and the counsel for the city of New York that the city should bear one-half of the expense of the master's copy and the State one-half, thereby reducing the charge to the State to twelve and one-half cents a folio, instead of twenty-five cents.

The testimony in the litigation was begun July 16, 1906, and was continued until April 2, 1907.

At the time of the commencement of the litigation, Julius M. Mayer was Attorney-General of the State; but his term expired on January 1, 1907, before the termination of the litigation.

The claimant was employed by Attorney-General Mayer to take the testimony and to furnish certain material besides copies of the testimony and has been paid for his services down to the close of Mr. Mayer's term of office, to wit, to January 1, 1907.

At the beginning of the year 1907, a new Attorney-General, William S. Jackson, came into office; and an arrangement was made for the continuance of the claimant Carroll

as the stenographer in the litigation under the same terms under which he had previously served the State.

For the services performed by the claimant Carroll after January 1, 1907, he has not been paid; and this claim has been filed for such services, a part of which has been assigned to the other claimants above named.

While the State has placed limits upon the authority of its officers to contract and incur indebtedness on its behalf (Executive Law, § 62; State Finance Law, § 35; Chase v. United States, 44 Fed. Rep. 732; affd., 155 U. S. 489; Dillon Mun. Corp. [4th ed.], § 445; McDonald v. Mayor, 68 N. Y. 29; Throop Pub. Off., § 55; Mech. Pub. Off., § 535), it may nevertheless ratify any of their acts whenever these acts are not void under the Constitution. Throop Pub. Off., § 551; Mech. Pub. Off., § 535. Dillon states the rule with reference to the ratification of the unauthorized acts of municipal officers as follows: "A municipal corporation may 'ratify the unauthorized acts and contracts of its agents or officers which are within the scope of the corporate powers but not otherwise." Dillon Mun. Corp. [4th ed.], § 463. He further says that this ratification may be inferred from the acts of the corporation and that the same principles are applicable to such corporations as to individuals. Id. The same rule applies to the State, except that the limitation upon the State to ratify unauthorized acts is the State Constitution. This rule of law is well stated by Chief Judge Ruger in O'Hara v. State of New York, 112 N. Y. 146: "It cannot be questioned, we think, but that when individuals voluntarily furnish property or render valuable services to the state, at the request of state officers for state purposes, but with the expectation of payment for the same, the legislature may ratify the acts of such officers, although previously unauthorized, and create a legal liability on the part of the state to pay for such property and services, enforceable in its tribunals."

Within the line of these authorities, there was a ratification of the contract with the claimant Carroll. The original contract made with Attorney-General Mayer was ratified by the appropriation made by chapter 578 of the Laws

of 1907, which specifically referred to the gas litigation, and made an appropriation to meet the expenses thereof down to the end of Attorney-General Mayer's term of office.

The language of this appropriation is as follows: "For the payment of services and disbursements authorized and expenses incurred by the attorney-general pursuant to law prior to January first, nineteen hundred seven, in the actions in the circuit court of the United States for the southern district of New York brought to restrain the officers charged by law with the execution of the provisions of chapter one hundred twenty-five, laws of nineteen hundred six, forty-seven thousand eight hundred fifty-four dollars and ninety-four cents ($47,854.94) or so much thereof as may be necessary, to be audited by the comptroller upon the certificate of the attorney-general then in office." Laws of 1907, chap. 578, p. 1321.

This appropriation operated as a ratification of the entire contract. City of New York v. Davenport, 92 N. Y. 604; Mech. Pub. Off., § 543; Farmers' Loan & Trust Co. v. Walworth, 1 N. Y. 434. The claimant Carroll's contract was for the entire litigation, and the ratification covered not only the services rendered during the term of Attorney-General Mayer but also those rendered during the term of Attorney-General Jackson. Tallman v. Kimball, 74 Hun, 279. In addition to this ratification, however, Attorney-General Jackson reaffirmed the contract, and the Legislature made appropriations sufficient to cover the expenses for the remainder of the litigation.

This appropriation reads as follows: "For the expenses of his office, including furniture, books, binding, blanks, printing, postage, express or freight upon letters, documents or other matter including boxes or other covering therefor, telegraph, telephone and messenger service and other expenses of the attorney-general in the conduct of his office, including temporary clerical and stenographic services, eleven thousand five hundred dollars or so much thereof as may be necessary.

"For the New York city bureau of the Attorney-General's office; for the compensation of special counsel at not to

exceed ten dollars per day, each to be designated on the written order of the attorney-general, or the New York city deputy of the attorney-general, and for office rent, postage, telegraph and telephone expenses, blank books, stationery and other necessary expenses incidental to the conduct of the office, including temporary clerical and stenographic service, ten thousand dollars, or so much thereof as may be necessary." Laws of 1907, chap. 9, § 1, p. 17.

These appropriations are general in their character and are intended to include the claimant's claim. The fact that it was not paid out of the appropriations does not vitiate the effect of the appropriations as a ratification of his contract.

At the time that these appropriations were made, the Legislature knew that the litigation was pending and the expense involved in carrying it on; and, when the appropriation in 1906 was made, it knew that additional expenses would be incurred to complete the hearings down to the close of the case. The appropriation statutes have as binding a force as the provisions in the Executive Law and State Finance Law, and are to be construed in connection with those statutes, and are sufficient to constitute a ratification of the acts of the Attorney-General where, as in this case, work has been done for the State and the benefits have been accepted by it. Dillon Mun. Corp. [4th ed.], § 464; Mech. Pub. Off., § 549.

There is no dispute as to any of the items of the claim, and an award for the sum of $8,921.03, with interest from April 2, 1907, must be made.

SWIFT, J., concurs.

Judgment for claimants.